## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| MICHELLE RUBIN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. |
| | ) | |
| | ) | **COMPLAINT FOR** |
| v. | ) | **VIOLATION OF THE** |
| | ) | **FEDERAL SECURITIES LAWS** |
| AK STEEL HOLDING | ) | |
| CORPORATION, RALPH S. | ) | **JURY TRIAL DEMANDED** |
| MICHAEL, III, DENNIS C. CUNEO, | ) | |
| SHERI H. EDISON, MARK G. ESSIG, | ) | |
| WILLIAM K. GERBER, GREGORY | ) | |
| B. KENNY, ROGER K. NEWPORT, | ) | |
| DWAYNE A. WILSON, VICENTE | ) | |
| WRIGHT, and ARLENE M. YOCUM, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff Michelle Rubin ("Plaintiff"), upon information and belief, including an examination and inquiry conducted by and through her counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for her Complaint:

### NATURE AND SUMMARY OF THE ACTION

1. This is an action brought by Plaintiff against AK Steel Holding Corporation ("AK Steel" or the "Company") and the members of its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission

("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which AK Steel will be acquired by Cleveland-Cliffs Inc. ("Cliffs"), through its wholly owned subsidiary Pepper Merger Sub Inc. ("Merger Sub") (the "Proposed Transaction").

2.     On December 3, 2019, AK Steel and Cliffs issued a joint press release announcing that they had entered into an Agreement and Plan of Merger dated December 2, 2019 (the "Merger Agreement").  Under the terms of the Merger Agreement, each AK Steel stockholder will receive 0.400 shares of Cliffs common stock for each share of AK Steel common stock they own (the "Merger Consideration").  Based on Cliffs' January 31, 2020 closing stock price of $7.02, the Merger Consideration has an implied value of $2.81 per AK Steel share.

3.     On February 4, 2020, AK Steel filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC.  The Proxy Statement, which recommends that AK Steel stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) the Company's, Cliffs' and the pro forma company's financial projections; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor, Goldman Sachs & Co. LLC ("Goldman"); and (iii) Goldman's potential conflicts of interest.   Defendants

authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.      In short, unless remedied, AK Steel's public stockholders will be irreparably harmed because the Proxy Statement's material misrepresentations and omissions prevent them from making a sufficiently informed voting decision on the Proposed Transaction.  Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.      This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and

where the evidence exists.  AK Steel leases an administration building in Dearborn, Michigan and one of AK Steel's eight steel making and finishing plants is located in this District.  Moreover, each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District.

### THE PARTIES

8.      Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of AK Steel.

9.      Defendant AK Steel is a Delaware corporation with its principal executive offices located at 9227 Centre Pointe Drive, West Chester, Ohio 45069. Through its wholly owned subsidiary, AK Steel Corporation, the Company is a leading producer of flat-rolled carbon, stainless and electrical steel products, primarily for the automotive, infrastructure and manufacturing, and distributors and converters markets.  AK Steel's common stock trades on the New York Stock Exchange under the ticker symbol "AKS."

10.     Defendant Ralph S. Michael, III ("Michael") is Chairman of the Board and has been a director of the Company since July 2007.

11.     Defendant Dennis C. Cuneo ("Cuneo") has been a director of the Company since January 2008.

12.     Defendant Sheri H. Edison ("Edison") has been a director of the Company since August 2014.

13.     Defendant Mark G. Essig ("Essig") has been a director of the Company since November 2013.

14.     Defendant William K. Gerber ("Gerber") has been a director of the Company since January 2007.

15.     Defendant Gregory B. Kenny ("Kenny") has been a director of the Company since January 2016.

16.     Defendant Roger K. Newport ("Newport") has been Chief Executive Officer ("CEO") and a director of the Company since January 2016.  Defendant Newport has served in various senior positions since joining the Company in 1985.

17.     Defendant Dwayne A. Wilson ("Wilson") has been a director of the Company since January 2017.

18.     Defendant Vicente Wright ("Wright") has been a director of the Company since November 2013.

19.     Defendant Arlene M. Yocum ("Yocum") has been a director of the Company since January 2017

20.     Defendants identified in paragraphs 10-19 are referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

21.     Cliffs is an Ohio corporation with its principal executive offices located at 200 Public Square, Cleveland, Ohio 44114.  Founded in 1847, Cliffs is the largest

and oldest independent iron ore mining company in the United States.  It is a major supplier of iron ore pellets to the North American steel industry from its mines and pellet plants located in Michigan and Minnesota.  In 2020, Cliffs expects to be the sole producer of hot briquetted iron, or HBI, in the Great Lakes region with the development of its first production plant in Toledo, Ohio.  Cliffs' common stock trades on the New York Stock Exchange under the ticker symbol "CLF."

22.     Merger Sub is a Delaware corporation and wholly owned subsidiary of Cliffs.

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

23.     AK Steel, through its wholly owned subsidiary, AK Steel Corporation, is a leading producer of flat-rolled carbon, stainless and electrical steel products, primarily for the automotive, infrastructure and manufacturing, and distributors and converters markets.  Its other subsidiaries also provide customer solutions with carbon and stainless steel tubing products, advanced-engineered solutions, tool design and build, hot- and cold-stamped steel components, and complex assemblies. AK Steel is the successor to Armco Inc. ("Armco") and has built upon Armco's rich history of creating leading-edge steel innovations since its formation in 1899.

24.     The Company targets customers who require comprehensive steel solutions that involve technically demanding, high quality steel products, "just-in-

time" delivery, technical support and product development assistance.   The Company's strategy is to focus on markets for its steel solutions that deliver higher margins, where possible, and reduce amounts sold into the typically lower-margin steel spot markets, which have experienced substantial volatility in pricing over the past several years primarily as a result of shifting international trade environments and related effects on the domestic markets it serves.  The Company sells its products to customers in three broad market categories: (i) automotive; (ii) infrastructure and manufacturing, which includes electrical power; and (iii) distributors and converters.

25.   On October 30, 2019, AK Steel announced its third quarter 2019 financial results, including net income of $2.8 million, or $0.01 per diluted share, and adjusted EBITDA of $86.9 million, or 5.7% of sales.  Reflecting on the quarter while also looking ahead, defendant Newport stated:

> Our third quarter results were essentially in line with our expectations despite a challenging environment.  We continued to make solid progress in our strategy to focus on higher-value business during the quarter. As we look to 2020, we are excited about our prospects, particularly in automotive where we expect meaningful market share growth.

**The Proposed Transaction**

26.   On December 3, 2019, AK Steel and Cliffs issued a joint press release announcing the Proposed Transaction.  The press release states, in relevant part:

> CLEVELAND & WEST CHESTER, Ohio--(BUSINESS WIRE)--Dec. 3, 2019-- Cleveland-Cliffs Inc. (NYSE: CLF) and AK Steel Holding Corporation (NYSE: AKS) are pleased to announce that they have

entered into a definitive merger agreement pursuant to which Cliffs will acquire all of the issued and outstanding shares of AK Steel common stock. Lourenco Goncalves, Chairman of the Board, President and CEO of Cliffs, will lead the expanded organization.

Under the terms of the merger agreement, AK Steel shareholders will receive 0.40 shares of Cliffs common stock for each outstanding share of AK Steel common stock they own. Upon completion of the transaction, Cliffs shareholders will own approximately 68% and AK Steel shareholders will own approximately 32% of the combined company, respectively, on a fully diluted basis.

The fixed exchange ratio implies a consideration of $3.36 per share of AK Steel common stock and represents a premium of 16% based on the closing share prices of Cliffs and AK Steel common shares, respectively, as of December 2, 2019, and a premium of 27% based on the 30-day volume weighted average price of AK Steel common shares. The transaction implies an aggregate consideration to AK Steel shareholders of approximately $1.1 billion on a fully diluted basis, a total enterprise value of approximately $3.0 billion for AK Steel and an acquisition multiple of 5.6x LTM Adjusted EBITDA.

The transaction will combine Cliffs, North America's largest producer of iron ore pellets, with AK Steel, a leading producer of innovative flat-rolled carbon, stainless and electrical steel products, to create a vertically integrated producer of value-added iron ore and steel products. The combined company will be ideally positioned to provide high-value iron ore and steel solutions to customers primarily across North America.

Mr. Goncalves stated: "We are excited to be able to deliver real value to the shareholders of both Cliffs and AK Steel through a value enhancing and leverage-neutral transaction. By combining the best-in-class quality of AK Steel's assets and its enviable product mix with Cliffs' debt profile and proven management team, we are creating a premier North American company, self-sufficient in iron ore pellets and geared toward high value-added steel products."

He continued, "The pro forma Cliffs will be a vertically integrated steel company that is expected to drive improved profitability for existing

Cliffs and AK Steel shareholders and is well-positioned to serve both the blast furnace and electric arc furnace segments. In addition, Cliffs' existing strong balance sheet and self-sufficiency in pellets for the combined company provide flexibility to pursue additional growth opportunities, including the potential future utilization of the blast furnace in Ashland to produce merchant pig iron, an opportunity neither company could pursue on a standalone basis."

Mr. Goncalves concluded, "For Cliffs, we expect to realize immediate growth and a long-desired objective of a more diverse customer base, as well as more predictable cash flow generation due to the contracted nature of AK Steel's sales of high-end automotive steel. Our track record of providing high-grade iron ore combined with AK Steel's recognized ability to produce the highest quality steel grades, creates a highly complementary and compelling business model. We look forward to welcoming the AK Steel team into our organization and creating a unique company focused on executing value-enhancing opportunities for all of our stakeholders."

Roger K. Newport, CEO of AK Steel, added, "We believe this transaction is a compelling opportunity for AK Steel shareholders to participate in the substantial upside potential of what will be a premier vertically integrated producer of value-added iron ore and steel products with significant scale and diversification. Our shareholders will benefit from exposure to a larger, more diversified company that is better positioned to capitalize on growth opportunities. The combination of Cliffs' iron ore pellet capabilities and our innovative, high-quality steel product development and production is strategically compelling. Together, we expect to be able to take advantage of growth opportunities faster and more fully than either company could on its own. With AK Steel's 120-year heritage, which began in Ohio, and expertise in steelmaking, AK Steel and Cliffs make an excellent combination, which we expect will facilitate a smooth integration process."

## Insiders' Interests in the Proposed Transaction

27.    AK Steel insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's

executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of AK Steel.

28.    Notably, several Company insiders will secure positions for themselves with the combined company.  For example, three current members of the Board will serve on the combined company's board of directors.

29.    Moreover, if they are terminated in connection with the Proposed Transaction, AK Steel's named executive officers stand to receive substantial cash severance payments as set forth in the following table:

| Name | Cash ($)(1) | Pension/ NQDC ($)(2) | Equity ($)(3) | Perquisites/ Benefits ($)(4) | Total ($) |
|---|---|---|---|---|---|
| Roger K. Newport | 8,363,858 | 7,689,093 | 2,719,229 | 63,427 | 18,835,607 |
| Christopher J. Ross | 1,436,054 | 1,040,152 | 168,288 | 60,157 | 2,704,651 |
| Kirk W. Reich | 5,582,436 | 5,789,192 | 1,043,284 | 53,067 | 12,467,979 |
| Joseph C. Alter | 2,324,110 | 1,638,185 | 373,047 | 60,550 | 4,395,892 |
| Scott M. Lauschke | 1,844,478 | 5,646,214 | 255,367 | 60,210 | 7,806,269 |
| Jaime Vasquez(5) | — | — | — | — | — |

## The Proxy Statement Contains Material Misstatements or Omissions

30.    The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to AK Steel's stockholders.  The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction.

31.    Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially

misleading information concerning: (i) the Company's, Cliffs' and the pro forma company's financial projections; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Goldman; and (iii) Goldman's potential conflicts of interest.

***Material Omissions Concerning the Company's, Cliffs' and the Pro Forma Company's Financial Projections***

32. The Proxy Statement omits material information regarding Company management's, Cliffs', and the pro forma company's financial projections.

33. With respect to the "AK Steel Unaudited Forecasted Financial Information" and the "Cliffs-Adjusted AK Steel Unaudited Forecasted Financial Information," the Proxy Statement fails to disclose: (i) all line items used to calculate (a) Adjusted EBITDA, (b) Levered Free Cash Flow, and (c) Unlevered Free Cash Flow; and (ii) with respect to the "AK Steel Unaudited Forecasted Financial Information," NOL Usage.

34. With respect to the "Cliffs Unaudited Forecasted Financial Information" and "AK Steel-Adjusted Cliffs Unaudited Forecasted Financial Information," the Proxy Statement fails to disclose: (i) all line items used to calculate (a) Adjusted EBITDA, (b) Levered Free Cash Flow, and (c) Unlevered Free Cash Flow; and (ii) and with respect to the "AK Steel Adjusted Cliffs Unaudited Forecasted Financial Information," NOL Usage.

35.    With respect to the "Pro Forma Unaudited Forecasted Financial Information," the Proxy Statement fails to disclose: (i) all line items used to calculate (a) Adjusted EBITDA, (b) Levered Free Cash Flow, and (c) Unlevered Free Cash Flow; and (ii) NOL Usage.

36.    The omission of this information renders the statements in the "Unaudited Forecasted Financial Information" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Goldman's Financial Analyses***

37.    The Proxy Statement also fails to disclose material information concerning Goldman's financial analyses.

38.    The Proxy Statement describes Goldman's fairness opinion and the various valuation analyses performed in support of its opinion.  However, the description of Goldman's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses.  Without this information, as described below, AK Steel's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Goldman's fairness opinion in determining whether to vote in favor of the Proposed Transaction.

39.    With respect to Goldman's Illustrative Discounted Cash Flow Analysis for AK Steel, the Proxy Statement fails to disclose: (i) the estimated terminal year Adjusted EBITDA (pension adjusted) of AK Steel; (ii) the terminal values of the

Company; (iii) quantification of the inputs and assumptions underlying the discount rates ranging from 10.5% to 11.5%; (iv) the net debt of the Company as of September 30, 2019; (v) unfunded pension and OPEB liabilities as of September 30, 2019; and (vi) the fully diluted shares of AK Steel common stock as of November 29, 2019.

40.     With respect to Goldman's Illustrative Discounted Cash Flow Analysis for AK Steel Shares on a Pro Forma Basis, the Proxy Statement fails to disclose: (i) the estimated terminal year Adjusted EBITDA (pension adjusted) of Cliffs on a pro forma basis; (ii) the terminal values of the Company; (iii) quantification of the inputs and assumptions underlying the discount rates ranging from 8.5% to 9.5%; (iv) the net debt and unfunded pension liabilities on a pro forma basis as of September 30, 2019; and (v) the fully diluted shares of Cliffs common stock as of November 29, 2019.

41.     The omission of this information renders the statements in the "Opinion of Goldman Sachs, AK Steel's Financial Advisor" and "Unaudited Forecasted Financial Information" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Goldman's Potential Conflicts of Interest***

42.     The Proxy Statement omits material information regarding potential conflicts of interest of Goldman.

43.     Specifically, the Proxy Statement sets forth that:

On October 14, 2019, representatives of Goldman Sachs (including certain members of the team that would advise AK Steel in connection with the potential transaction) informally discussed with members of the Cliffs management team certain asset-based lending considerations, funding options and strategic growth opportunities for Cliffs. AK Steel was identified in the materials used by Goldman Sachs in such meeting as one of thirteen companies that presented potential strategic growth opportunities for Cliffs. Goldman Sachs' materials included only publicly available information (e.g., market capitalization, enterprise value, 2019E EBITDA/multiple and indebtedness information) and did not contain potential price ranges, synergy calculations, or other transaction-specific information.

* * *

Later in October 2019, Mr. Alter informed AK Steel's outside legal counsel, Weil, about the potential transaction with Cliffs. AK Steel also commenced working with Goldman Sachs in connection with the potential transaction. Prior to AK Steel commencing work with Goldman Sachs in connection with the potential transaction involving Cliffs, Goldman Sachs informed AK Steel that representatives of Goldman Sachs (including members of its proposed team to advise AK Steel in connection with the potential transaction) had assisted Cliffs on several financing transactions and from time to time provided Cliffs with advice with respect to strategic matters over the past several years.

Proxy Statement at 74. Yet, the Proxy Statement fails to disclose whether (i) the discussions between Goldman and Cliffs management regarding strategic growth opportunities included or focused on an acquisition of AK Steel by Cliffs or a merger of the two companies; and (ii) whether prior to AK Steel commencing work with Goldman in connection with the potential transaction involving Cliffs, Goldman made full disclosure that representatives of Goldman (including certain members of the team) provided Cliffs with advice with respect to strategic matters that included

an acquisition of AK Steel by Cliffs or a merger of the two companies.

44.    Additionally, the Proxy Statement sets forth that:

> Goldman Sachs has provided certain financial advisory and/or underwriting services to Cliffs and/or its affiliates from time to time for which Goldman Sachs' Investment Banking Division has received, and may receive, compensation. . . .  During the two-year period ended December 2, 2019, Goldman Sachs has recognized compensation for financial advisory and/or underwriting services provided by its Investment Banking Division to Cliffs and/or its affiliates of approximately $7.35 million, net of expenses and other adjustments. Goldman Sachs may also in the future provide financial advisory and/or underwriting services to AK Steel, Cliffs, and their respective affiliates for which Goldman Sachs' Investment Banking Division may receive compensation.

*Id.* at 112.   Yet, the Proxy Statement fails to disclose whether Goldman has performed past services for the Company or its affiliates as well as the compensation received or to be received by Goldman for such services.

45.    Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

46.    The omission of this information renders the statements in the "Background of the Merger" and "Opinion of Goldman Sachs, AK Steel's Financial Advisor" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

47.    The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in

failing to include this information in the Proxy Statement.  Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other AK Steel stockholders will be unable to make an informed voting decision on the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

### Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder

48.     Plaintiff repeats all previous allegations as if set forth in full.

49.     During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

50.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement.  The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants.  It misrepresented and/or omitted material facts, including material information about the Company's, Cliffs' and the pro forma company's financial projections, the data and inputs underlying the financial valuation analyses that

support the fairness opinion provided by Goldman, and Goldman's potential conflicts of interest. The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

51. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

52. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

53. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

54. Plaintiff repeats all previous allegations as if set forth in full.

55. The Individual Defendants acted as controlling persons of AK Steel within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of AK Steel, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power

to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

56.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

57.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of the Proxy Statement.

58.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

59.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

60.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, AK Steel's stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in her favor on behalf of AK Steel, and against defendants, as follows:

A.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to AK Steel stockholders;

B.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.   Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D.   Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.   Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated:  February 12, 2020                    **WEISSLAW LLP**


By  /s/ Richard A. Acocelli
    Richard A. Acocelli
    1500 Broadway, 16th Floor
    New York, New York 10036
    Tel: (212) 682-3025
    Fax: (212) 682-3010
    Email: racocelli@weisslawllp.com

    *Attorneys for Plaintiff*